IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ADOBE SYSTEMS INCORPORATED, | No. C 11-3938 CW |
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (Docket No. 23) |
| v. |  |
| KELORA SYSTEMS LLC, |  |
| Defendant. |  |

Plaintiff Adobe Systems Incorporated brings this action against Defendant Kelora Systems, LLC seeking a declaratory judgment of non-infringement, invalidity and intervening rights as to all or part of U.S. Patent No. 6,275,821 ('821 patent). Kelora moves to dismiss for lack of subject matter jurisdiction. Having considered the parties' submissions and oral arguments, the Court GRANTS Kelora's motion to dismiss.

BACKGROUND

Kelora is the owner of the '821 patent, which claims methods related to executing a guided parametric search. First Amended Complaint (1AC) ¶ 12. Adobe develops and sells many software programs for computers and electronics, including such technologies as Acrobat, Flash and PostScript. Id. at ¶ 10. Adobe also provides web hosting and other merchandising and data analytics services, such as through its Omniture business. Id.

On November 8, 2010, Kelora filed an action in the Western District of Wisconsin, Kelora v. Target, asserting infringement of

the '821 patent. Id. at ¶ 13.[1]  In the complaint, Kelora named more than ten defendants, including OfficeMax, Incorporated, retailers whom Kelora alleged infringed the '821 patent by using the patented search methods on their retail websites. Id.  Kelora did not name or refer to Adobe in the Wisconsin action.  However, Adobe alleges that Kelora's allegations against OfficeMax rest "at least in part" on OfficeMax's use of technology provided by Adobe. Id.  Adobe submits a copy of the claim chart for the '821 patent produced by Kelora in Kelora v. Target, Wolff Decl. ¶ 4, Ex. E, and states that Kelora purports to accuse the Adobe technology licensed by OfficeMax in this chart, Opp., at 2.  However, the claim chart does not refer to or mention Adobe or any other third-party provider.  Adobe has also made no claim in its complaint that its technology covers all steps contained in the claim chart, nor has it provided evidence that it does.  At the hearing, Adobe stated that it provides its licensees with the core functionality for the accused technology.  Adobe also stated that, for some clients, rather than providing them the licensed technology, Adobe maintains it on Adobe's own servers and processes searches on the clients' websites itself, and that Kelora's accusations thus implicate not just Adobe's technology but also its own actions.

    Kelora has also sent letters to at least thirty-two other entities, alleging infringement of the '821 patent. Id.; Wolff Decl. ¶ 3.  In Adobe's complaint, it states that Kelora's allegations against these entities, whom Adobe describes as

---

[1] The Wisconsin action was subsequently transferred to this Court and assigned No. C11-1548.

2

"purported licensees" of Adobe technology, are based on the use of technology that appears to have been provided "at least in part" by Adobe. 1AC, at ¶ 13. At the hearing, Adobe clarified that these "purported licensees" are actual licensees of Adobe technology. Adobe has provided copies of letters sent by Kelora to four Adobe licensees. See Wolff Decl. ¶ 3, Exs. A, B, C, D. In these letters, Kelora states that the company to whom the letter is addressed has infringed the '821 patent through its use of parametric search on its website. None of the letters refers to Adobe or any other specific provider of search functionality. See Wolff Decl. ¶ 3, Exs. C, D. Adobe has received indemnification demands from some of its licensees who have been approached or sued by Kelora. Wolff Decl. ¶ 3. Adobe did not allege that it has a legal obligation to provide indemnification to its licensees or provide evidence that it does. At the hearing, Adobe stated that its contracts with its licensees contain terms that legally oblige Adobe to indemnify its licensees against claims such as those brought by Kelora.

On August 11, 2011, in Kelora v. Target, C11-1548,[2] OfficeMax filed a third-party complaint against Adobe, alleging that OfficeMax had, through its predecessor company, contracted with an

---

[2] A court may consider "matters of judicial notice" without converting a motion to dismiss into a motion for summary judgment. United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Facts are judicially noticeable if they are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Id. The publicly available docket entries in Kelora v. Target are thus subject to judicial notice.

3

entity now owned by Adobe, for various search tools and professional services, which serve the basis of Kelora's suit against OfficeMax.  Third-Party Complaint in C11-1548, Docket No. 335, ¶¶ 6-9.  In the third-party complaint, OfficeMax alleged that Adobe had a duty to defend and indemnify OfficeMax for its expenses in defending against Kelora's action and for any settlement or judgment arising therefrom, under the terms of certain agreements between OfficeMax and Adobe.  Id. at ¶¶ 13-14.  OfficeMax further alleged that Adobe has not agreed fully to indemnify and defend OfficeMax from Kelora's lawsuit.  Id. at ¶ 10.  Adobe has submitted a declaration in the instant case stating that on August 5, 2011, Adobe "accepted the tender of defense and indemnity from OfficeMax regarding the infringement claims" and that OfficeMax acknowledged this on August 8, 2011.  Wolff Decl. ¶ 2.  Notably, the declaration does not state that Adobe had done so pursuant to a legal obligation to indemnify OfficeMax.  On November 30, 2011, OfficeMax voluntarily dismissed its third-party complaint against Adobe without prejudice.

On August 10, 2011, Adobe filed this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, "so that Adobe may ascertain its rights regarding the '821 patent."  1AC ¶ 22.  Adobe seeks declaratory judgment that Adobe technology does not infringe on the '821 patent, and of invalidity and intervening rights.  Kelora now moves to dismiss Adobe's complaint, arguing that the Court lacks subject matter jurisdiction over it because there is no substantial controversy between itself and Adobe.

## LEGAL STANDARD

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Federal subject matter jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears. Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may either be a 1ACial attack on the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). Once the defendant has introduced evidence of an actual lack of jurisdiction, the plaintiff "must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).

## DISCUSSION

The Declaratory Judgment Act, in accordance with Article III of the Constitution, requires an "actual controversy" before the Court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). A plaintiff may establish that jurisdiction is proper only where

5

"the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (citing Md. Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270 (1941)). This "adverse legal interest" requires a "dispute as to a legal right--for example, an underlying legal cause of action that the declaratory defendant could have brought or threatened to bring." Arris Group Inc. v. British Telecommunications PLC, 639 F.3d 1368, 1374 (Fed. Cir. 2011). Under the "all the circumstances" test, courts have "unique and substantial discretion in deciding whether to declare the rights of litigants." MedImmune, Inc., 549 U.S. at 136 (internal citations omitted).

"Prior to MedImmune, the Federal Circuit generally required that a declaratory judgment plaintiff in a patent dispute demonstrate: '(1) conduct by the patentee that created a 'reasonable apprehension' of suit on the part of the declaratory judgment plaintiff and (2) present activity by the declaratory judgment plaintiff that could constitute infringement or 'meaningful preparation' to conduct potentially infringing activity.'" Proofpoint, Inc. v. Innova Patent Licensing, LLC, 2011 WL 4915847, at *2 (N.D. Cal.) (quoting Prasco, LLC v. Medicis Pharm. Corp., 537 F.3d 1329, 1336 (Fed. Cir. 2008). "Although MedImmune requires courts to eschew bright-line rules for exercising declaratory jurisdiction, numerous decisions have found that the factors included in the Federal Circuit's previous two-part test remain relevant to the 'all the circumstances'

6

analysis." Id. This Court has previously recognized that the MedImmune decision "lowered the bar for a plaintiff to bring a declaratory judgment action in a patent dispute." Fujitsu Ltd. v. Nanya Technology Corp., 2008 WL 3539503, at *3 (N.D. Cal.) (quoting Frederick Goldman, Inc. v. West, 2007 WL 1989291, at *3 (S.D. N.Y.)) (internal formatting omitted). The Federal Circuit has more recently held that, while MedImmune did relax the prior rule, "declaratory judgment jurisdiction will not arise merely on the basis that a party learns of the existence of an adversely held patent, or even perceives that such a patent poses a risk of infringement, in the absence of some affirmative act by the patentee" directed at the specific plaintiffs. Ass'n for Molecular Pathology v. United States PTO, 653 F.3d 1329, 1344, 1348 (Fed. Cir. 2011).

Adobe argues that declaratory jurisdiction is appropriate because (1) Kelora's claims against Adobe's licensees exposes Adobe itself to claims for direct and indirect infringement; and (2) Kelora's claims against Adobe's licensees triggers a duty by Adobe to defend and indemnify them against Kelora's claims.

I. Jurisdiction Based on Exposure to Liability

In order to establish an "actual controversy" based on enforcement activity by a patent holder, the plaintiff seeking declaratory judgment must show that the patent holder took some affirmative acts directed at that plaintiff, not just broad and widespread enforcement activity. See Ass'n for Molecular Pathology, 653 F.3d at 1344-48; see also Proofpoint, 2011 WL

7

4915847, at *3 (relying on Ass'n for Molecular Pathology to find no affirmative acts supporting declaratory judgment jurisdiction where there were no allegations that the patent holder "claimed a right to a royalty from [the supplier], sent [the supplier] a cease-and-desist letter, or communicated with [the supplier's] employees"). Here, Adobe has not alleged that Kelora has communicated with Adobe at all before Adobe instituted this suit. Further, while Kelora contacted some Adobe customers, the evidence that Adobe has put forward shows that Kelora did not mention Adobe in those third-party communications or state that Adobe's products were the basis for the enforcement actions against those third parties. In the cases cited by Adobe, although the patentee did not directly contact the plaintiff, the patentee's demand letters to the plaintiff's clients specifically referred to the plaintiff or its products by name and identified the products and services provided by the plaintiff as the infringing items. See Arris Group, Inc., 639 F.3d at 1377 (describing in depth how "BT explicitly and repeatedly singled out Arris' products used in Cable One's network to support its infringement contentions" before finding that, under all of the circumstances, there was a dispute between Arris and BT sufficient to constitute a case or controversy); D&R Communications, LLC v. Garrett, 2011 WL 2418246, at *4 (D. N.J.) (finding jurisdiction based on Garrett's letters to D&R's clients alleging that D&R products and services violated Garrett's patent); Microsoft Corp. v. Phoenix Solutions, Inc., 741

8

F. Supp. 2d 1156, 1157-61 (C.D. Cal. 2010) (finding an actual controversy between Phoenix and Microsoft where "Phoenix specifically alleges that the Tellme IVR system provided by Microsoft to American Express infringes the patents-in-suit"); <u>Arrowhead Industrial Water, Inc. v. Ecolochem, Inc.</u>, 846 F.2d 731, 736 (Fed. Cir. 1988) (letters to a customer "citing Arrowhead and only Arrowhead and saying Arrowhead is not licensed").

Further, in cases where a court found a controversy based on infringement claims made against a declaratory plaintiff's customers, the defendant asserted infringement claims against the customers based on facts which, if proven, would compel the conclusion that the plaintiff itself had also directly infringed. While Adobe stated at the hearing that it provided its customers with all of the technology that Kelora alleges is infringing, this was not alleged in the complaint or demonstrated by the evidence that Adobe submitted with its opposition. While Adobe points to the claims chart produced by Kelora in Kelora's case against OfficeMax and says that Kelora's claims are based on the search techniques that OfficeMax uses on its website, Adobe does not make clear which steps on the claims chart are performed using Adobe's technology and states that Kelora's accusations rest "in part on the alleged use . . . of Adobe technology." Opp. at 5. Accordingly, Adobe has not made a showing that a finding of infringement on the part of OfficeMax or any of its other customers would necessarily imply that Adobe has also infringed,

9

or, conversely, that a finding that Adobe's products do not infringe would necessarily imply that its customers do not use Adobe's products in an infringing way.

Adobe has also not made allegations or presented evidence sufficient to support a finding that there is a controversy as to its liability for contributory infringement. "To establish contributory infringement, a patent owner must show: '(1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3) that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention.'" Proofpoint, 2011 WL 4915847, at *5 n.4 (quoting Fujitsu Ltd. v. Netgear Inc., 620 F.3d 1321, 1326 (Fed. Cir. 2010)). Adobe has not alleged, or pointed to allegations, that its products cannot be used without infringing the '821 patent and there is no indication that Adobe had the requisite knowledge or intent for indirect infringement. See Ours Tech., Inc. v. Data Drive Thru, Inc., 645 F. Supp. 2d 830, 839 (N.D. Cal. 2009) ("The Federal Circuit held there was no indication that Microchip had contributed to or induced infringement by its customers, because there was no evidence that Microchip's technology could not be used without infringing Chamberlain's patent or that Microchip had the required level of intent to cause and encourage the alleged infringement.") (citing Microchip Tech. Inc. v. Chamberlain Group, Inc., 441 F.3d 936, 944 (Fed. Cir. 2006)).

10

However, given Adobe's representations at the hearing that it does in fact provide, and in some cases, continue to maintain all of the technology that Kelora alleges is infringing, it appears that Adobe will be able truthfully to amend its complaint to remedy these deficiencies.

II. Jurisdiction based on Duty to Indemnify

Adobe argues that it has a separate basis for jurisdiction based on its duty to indemnify its licensees against Kelora's claims. Adobe bases its argument that indemnity is an alternative basis for declaratory judgment on the Federal Circuit's language in Arris, in which the court stated,

> that, where a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if (a) the supplier is obligated to indemnify its customers from infringement liability, or (b) there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers.

Arris, 639 F.3d at 1375. However, in that case, the court did not reach the issue of subject matter jurisdiction based on indemnification obligations, because it found that jurisdiction under the second prong. Id.

At least one court has found subject matter jurisdiction where there was a clear legal obligation to indemnify customers. See WS Packaging Group, Inc. v. Global Commerce Group, 505 F. Supp. 2d 561, 566-67 (E.D. Wis. 2007) (declaratory action plaintiff had a clear obligation to indemnify customers under the Wisconsin UCC and there was imminent personal threat of lawsuits against plaintiff's clients). However, courts have been unwilling

11

to find jurisdiction where there have been "mere allegations of indemnity obligations," instead of a clear legal obligation. Proofpoint, 2011 WL 4915847, at *5 (declining to find an actual controversy where plaintiff "has not alleged the existence of a valid agreement nor described its supposed obligations," but has only indicated that the prosecution activities have "spawned indemnity 'requests'"). See also Microchip, 441 F.3d at 944 ("Microchip has not produced any agreement indemnifying a customer against infringement of the patents-in-suit."); Ours Technology, Inc., 645 F. Supp. 2d at 839 (declining to find an actual controversy where "the court has been provided with no agreement or other written document evidencing a legal basis for the [customers] to have been indemnified by OTI" and thus the fact that OTI agreed to indemnify them "fails to carry any weight, let alone enough weight to create an adverse legal interest").

Here, Adobe has not alleged or demonstrated that it has any legal obligation to indemnify OfficeMax or any other customer. Thus, even though Adobe had agreed to indemnify OfficeMax, it may have volunteered to do so, without a legal obligation. Accordingly, the indemnification demands do not give rise to subject matter jurisdiction by themselves. However, because Adobe stated at the hearing that it is contractually obliged to indemnify its licensees, it appears that Adobe will be able to easily remedy this deficiency.

## CONCLUSION

For the foregoing reasons, Kelora's motion to dismiss (Docket No. 23) is GRANTED with leave to amend. Adobe may file and serve on Kelora a second amended complaint within seven days of the date

12

of this Order. Kelora may file a motion to dismiss the second amended complaint within seven days thereafter. Any subsequent motion to dismiss will be decided on the papers.

    IT IS SO ORDERED.

Dated: 12/7/2011

CLAUDIA WILKEN
United States District Judge